IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 21-cv-01771-CMA

KEITH SANDERSON,

    Plaintiff,

v.

UNITED STATES CENTER FOR SAFESPORT, INC.,

    Defendant.

---

**ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

---

This matter is before the Court on Defendant United States Center for SafeSport, Inc.'s ("SafeSport") Response to Plaintiff's *Ex Parte* Emergency Motion for Temporary Restraining Order, which called into question the Court's subject matter jurisdiction over this action. (Doc. # 19.) For the following reasons, this action is dismissed without prejudice, *sua sponte*, for lack of subject matter jurisdiction.

## I.    BACKGROUND

**A.    FACTUAL BACKGROUND**

Plaintiff, Keith Sanderson, is a Colorado resident who qualified to compete in the Tokyo Olympics and was placed on the United States Olympic Delegation roster by the National Governing Body ("NGB") USA Shooting, Inc. Defendant SafeSport is a Colorado nonprofit corporation authorized by Congress to investigate and resolve allegations of emotional, physical, and sexual abuse within Olympic and Paralympic

sports. The instant case stems from a letter Plaintiff received from the United States Olympic & Paralympic Committee ("USOPC") on June 23, 2021, which informed him that he had been removed from the U.S. Olympic Delegation due to his violation of the SafeSport Code.

Plaintiff competed in the Championship of the Americas in Guadalajara, Mexico, on November 10, 2018. On or about November 20, 2018, a 26-year-old co-competitor filed a complaint against Plaintiff with SafeSport, alleging sexual misconduct at the Championship of the Americas awards ceremony. Plaintiff received a Notice of the Allegations from SafeSport on October 28, 2020. As part of SafeSport's investigation of the alleged sexual misconduct, Plaintiff was interviewed and provided evidence in his defense.

On March 29, 2021, SafeSport issued its Notice of Decision to Plaintiff, therein finding that Plaintiff had engaged in sexual misconduct and sanctioning Plaintiff with a three-month suspension. Plaintiff disputes the underlying complaint, the veracity of the evidence against him, and the findings and conclusions SafeSport reached in its Notice of Decision. (Doc. # 13 at 14.) Under the SafeSport Code, Plaintiff had ten business days to request arbitration of SafeSport's findings and sanction. Plaintiff did not request arbitration or pay the required deposit before the notice period expired.

Plaintiff requested that SafeSport temporarily stay the execution of his sanction so that he could compete in the Tokyo Olympics. On May 7, 2021, SafeSport agreed to stay the sanction until after the Olympics under certain conditions, including that Plaintiff obtain a chaperone and accommodations outside of the Olympic village. Plaintiff asserts that both conditions would have effectively precluded him from competing in Tokyo

because the host nation required that all competitors reside in the Olympic village and prohibited chaperones from residing in the village.

On June 1, 2021, after allegations surfaced that Plaintiff had violated the SafeSport Code by publicly disclosing the name of a claimant involved in the SafeSport Response and Resolution Process, SafeSport revoked the temporary stay in a "Notice of Allegations & Withdrawal of Temporary Stay" and reinstituted Plaintiff's suspension. (Doc. # 13 at 5.) On June 3, 2021, Plaintiff requested a stay of execution on the new allegation from SafeSport, which SafeSport denied that day.

Plaintiff had until June 22, 2021, to pay a deposit to arbitrate the instant dispute. He failed to do so, which foreclosed his administrative remedies with SafeSport. Accordingly, SafeSport's decision became final on June 23, 2021. On that day, SafeSport advised Plaintiff by email of the finality of its decision, and thereby imposed a three-month suspension that will expire on August 3, 2021. *See* (Doc. # 13-2). Also on June 23, 2021, Plaintiff received a letter from USOPC informing him that, as a result of a violation reported by SafeSport, he had been removed from the United States Olympic Delegation. (Doc. # 13-3 at 1.)

**B.   PROCEDURAL BACKGROUND**

Plaintiff initiated the instant case against SafeSport and former Defendants USOPC and USA Shooting in this Court on June 28, 2021. The following day, he filed an *Ex Parte* Emergency Motion for Temporary Restraining Order ("TRO Motion"), which moved the Court to enjoin SafeSport from disqualifying Plaintiff from Olympic competition; USA Shooting from naming Plaintiff's replacement for the 25-Meter Rapid Fire Pistol allocation; and USOPC from submitting a final roster of competitors that

included a replacement for Plaintiff in the 25-Meter event or from disqualifying Plaintiff for any other reason. (Doc. # 5.) On June 30, 2021, this Court denied the Motion to the extent it sought an *ex parte* TRO, reserved ruling on the portion of the Motion that sought a preliminary injunction, directed Plaintiff to serve all Defendants, and allowed Defendants the opportunity to respond to the Motion. In response, Plaintiff voluntarily dismissed two of the three Defendants—i.e., USOPC and USA Shooting—and filed an Amended Complaint against SafeSport only. (Doc. # 9.)

On July 2, 2021, Plaintiff moved the Court to reconsider its June 30, 2021 Order. (Doc. # 10.) On July 6, 2021, this Court denied Plaintiff's TRO Motion (Doc. # 5) and Emergency Motion for Reconsideration (Doc. # 10) because Plaintiff represented that the injunctive relief he sought in both Motions—i.e., reinstatement to the roster of Olympic competitors—was no longer available as the deadline to amend the roster had passed. *See* (Doc. # 12).

On July 14, 2021, Plaintiff filed a Second Amended Complaint, asserting claims for breach of contract and retaliation against SafeSport. (Doc. # 13.) He filed yet another Motion for Reconsideration on July 15, 2021, in which he moved the Court to reconsider its July 6, 2021 Order and to evaluate his TRO Motion on the merits based on receipt of new information previously unavailable—that there was a process by which the final roster of Olympic athletes could be amended, under extenuating circumstances, after the July 5, 2021 deadline. The Court granted Plaintiff's second Motion for Reconsideration to the extent it moved the Court to consider Plaintiff's request for a preliminary injunction on the merits, and it ordered SafeSport to respond to the TRO Motion. (Doc. # 15.)

SafeSport timely filed its Response on July 23, 2021. (Doc. # 19.) Therein, SafeSport argues that the Court lacks subject matter jurisdiction over this action.[1] The Court ordered that Plaintiff file his Reply by July 29, 2021, and to show cause therein why this case should not be dismissed for lack of subject matter jurisdiction. (Doc. # 23.) Plaintiff timely filed a "Memorandum of Law: Subject Matter Jurisdiction" on July 27, 2021. (Doc. # 24.)

## II.   LEGAL STANDARDS

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). "The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.,* 384 F.3d 1220, 1224 (10th Cir. 2004). Federal subject matter jurisdiction can arise under 28 U.S.C. § 1331 for claims "arising under the Constitution, laws, or treaties of the United States" or under 28 U.S.C. § 1332(a) where the amount in controversy exceeds $75,000 and the conflict is between citizens of different states.

A federal court must satisfy itself as to its own jurisdiction and may take *sua sponte* action to do so. *See Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver,* 628 F.2d 1289, 1297 (10th Cir. 1980). A court should not proceed without having first assured itself that jurisdiction exists. *See Cunningham v. BHP*

---

[1] In its Response, SafeSport also argues that the TRO Motion should be denied because Plaintiff's requested relief is moot and because the preliminary injunction factors weigh against injunctive relief. The Court does not reach these arguments herein because it concludes that it lacks subject matter jurisdiction.

*Petroleum Great Britain PLC,* 427 F.3d 1238, 1245 (10th Cir. 2005).

### III. DISCUSSION

In his Second Amended Complaint, Plaintiff seeks declaratory and injunctive relief in the form of reinstatement to the final roster of competitors for the Tokyo Olympics. Despite his assertion of state-law claims for breach of contract and retaliation, he asserts that the Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. *See* (Doc. # 24 at 11). SafeSport argues that the Court lacks subject matter jurisdiction on two grounds: (1) the Ted Stevens Olympic and Amateur Sports Act ("Amateur Sports Act"), 36 U.S.C. § 220501 *et seq.*, does not provide a private right of action and preempts state-law claims challenging Olympic eligibility determinations; and (2) Plaintiff failed to exhaust his administrate remedies. Plaintiff responds that the Court has subject matter jurisdiction based on the common-law exceptions found in *Harding v. U.S. Figure Skating Ass'n*, 851 F. Supp. 1476 (D. Or. 1994), and *Lindland v. USA Wrestling Ass'n*, 227 F.3d 1000 (7th Cir. 2000). (Doc. # 24 at 13.) The Court agrees with SafeSport and concludes that it lacks subject matter jurisdiction.

**1.    JURISDICTION OVER OLYMPIC ELIGIBILITY DECISIONS**

Under the Amateur Sports Act, Congress vested USOPC with the power to "exercise exclusive jurisdiction, directly or through constituent members or committees, over all matters pertaining to the United States participation in the Olympic Games." 36 U.S.C. § 220503(3)(A). In March of 2017, USOPC chartered SafeSport, which Congress has authorized, through two amendments to the Amateur Sports Act, to investigate and resolve allegations of emotional, physical, and sexual abuse within

6

Olympic and Paralympic sports. *See* 36 U.S.C. §§ 220541-43. Congress has mandated that SafeSport "exercise jurisdiction over" USOPC and "each national governing body with regard to safeguarding amateur athletes against abuse" and has required that SafeSport "establish mechanisms that allow for the reporting, investigation, and resolution . . . of alleged sexual abuse . . . ." 36 U.S.C. § 220541(a)(1)(B), (D).

Notably, the Amateur Sports Act does not "give rise to a claim under State law or create a private right of action." 36 U.S.C. §§ 220541(a)(2)(C), (d)(3)(B).[2] In addition to recognizing that the Act does not create a private right of action, courts routinely find that the Amateur Sports Act preempts not only eligibility challenges brought directly under the Act, but state-law causes of action that essentially seek relief based on the athlete's eligibility. *See, e.g.*, *Slaney v. Int'l Amateur Ath. Fed'n,* 244 F.3d 580, 596 (7th Cir. 2001); *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1225 (D. Utah 2017) (dismissing the plaintiff's state-law claims for, *inter alia*, breach of contract and the duty of good faith and fair dealing, as the claims went "to the heart of his eligibility to coach and [were] thus preempted by the [Amateur] Sports Act."), *aff'd sub nom. Pliuskaitis v. USA Swimming*, 720 F. App'x 481 (10th Cir. 2018); *Graham v. U.S. Anti-Doping Agency*, No. 5:10-CV-194-F, 2011 WL 1261321, at *5 (E.D.N.C. Mar. 31, 2011) (concluding the plaintiff's claims, styled as claims for constitutional violations and

---

[2] Courts examining the legislative history of the Act have determined that Congress explicitly rejected the creation of a private cause of action. *See Michels v. U.S. Olympic Comm.,* 741 F.2d 155, 157–58 (7th Cir. 1984) (discussing how legislative history demonstrates that Congress "considered and rejected a cause of action for athletes to enforce the [Amateur Sports] Act's provisions"); *see also Oldfield v. Athletic Congress,* 119 F.2d 505 (9th Cir. 1985) (concluding that Congress had not intended to allow athletes to sue in federal court to enforce rights created by the Amateur Sports Act).

7

slander, actually challenged the plaintiff's eligibility and, therefore, fell outside of the court's jurisdiction).

Like the claims in the cases cited above, Plaintiff's claims undoubtedly go to the heart of his eligibility to compete in the Olympics, although styled as state-law claims for breach of contract and retaliation. Plaintiff seeks one fundamental remedy—reinstatement to the final roster for the Tokyo Olympics. He does not allege "separate tortious acts which are outside the scope of [SafeSport's] administrative scheme." *See Cantrell v. United States Soccer Federation*, 924 P.2d 789, 792 (Okla. App. 1996) (affirming trial court's dismissal of case where plaintiff asserted tort claims in name only and effectively sought further appeal of administrative determinations made under the Amateur Sports Act). Nor does Plaintiff state a claim under federal law that falls outside of the scope of the Amateur Sports Act. *See Lee v. U.S. Taekwondo Union*, 331 F. Supp. 2d 1252 (D. Haw. 2004) (dismissing state-law claims akin to eligibility challenges but allowing federal discrimination claim to proceed). Therefore, Plaintiff "cannot escape the fact that [his] state-law claims . . . are actually challenges to the method by which [SafeSport and] the USO[P]C determine[ ] eligibility of athletes." *Slaney,* 244 F.3d at 596. Accordingly, as eligibility determinations fall within the exclusive parameters of the Amateur Sports Act, this court lacks jurisdiction to hear Plaintiff's claims. *See Graham*, 2011 WL 1261321, at *5.

Plaintiff relies on *Harding v. U.S. Figure Skating Ass'n*, 851 F. Supp. 1476 (D. Or. 1994), and *Lindland v. USA Wrestling Ass'n*, 227 F.3d 1000 (7th Cir. 2000), to argue that this case qualifies for an exception to the general rule that courts lack jurisdiction

8

over eligibility determinations made under the Amateur Sports Act. (Doc. # 24 at 13.) Neither case is applicable here.

First, in *Harding v. U.S. Figure Skating Ass'n*, the district court ordered the defendant association to set the plaintiff's administrative disciplinary hearing at a reasonably convenient time for both parties. The court rejected the argument that it lacked jurisdiction on the grounds that the plaintiff's case was premised on diversity jurisdiction—not the Amateur Sports Act, did not implicate the Olympic Games, and did not require ordering the defendant to include the plaintiff as a member of the United States delegation or require the court take any position on the merits of the disciplinary proceeding against her. *Id.* at 1480. The district court warned that

> [i]ntervention [in disciplinary proceedings held by private associations] is appropriate only in the most extraordinary circumstances, where the association has clearly breached its own rules, that breach will imminently result in serious and irreparable harm to the plaintiff, and **the plaintiff has exhausted all internal remedies**.

851 F. Supp. at 1479 (emphasis added).

The facts and reasoning of *Harding* are readily distinguishable from this case. In this case, Plaintiff has failed to exhaust his internal remedies by failing to arbitrate SafeSport's finding that Plaintiff had engaged in sexual misconduct and/or its sanction against him in the form of a three-month suspension. Further, Plaintiff brought this action under the Court's federal question jurisdiction, explicitly premised on the Amateur Sports Act, and he moves this Court to deem him eligible for the Olympics and to require SafeSport and USOPC to include him on the Olympic roster. *Harding* does not stand for the proposition that this Court has jurisdiction to order such extraordinary relief.

Moreover, *Lindland v. USA Wrestling Ass'n*, 227 F.3d 1000 (7th Cir. 2000), is inapposite. The plaintiff in *Lindland* sought confirmation of an arbitration award that he obtained pursuant to the Amateur Sports Act. When the NGB for amateur wrestling was unwilling to accept the outcome of said arbitration, the plaintiff filed suit, and the Seventh Circuit ordered the NGB to implement the arbitration award and thereby name the plaintiff as its nominee for the Olympics. Unlike the plaintiff in *Lindland*, who arbitrated his dispute according to normal procedures, Plaintiff in this case decided to forego arbitration of SafeSport's eligibility determination and now moves this Court to overturn SafeSport's decision and to declare him eligible for the Olympics. The Court lacks jurisdiction to do so.

## 2.   FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Having determined that subject matter jurisdiction is lacking, the Court need not consider whether the instant case must be dismissed for Plaintiff's failure to exhaust his administrative remedies. However, the Court notes that dismissal would be appropriate on this basis as well.

Under the Amateur Sports Act, SafeSport may, "in its discretion, utilize a neutral arbitration body and develop policies and procedures to resolve allegations of sexual abuse within its jurisdiction to determine the opportunity of any amateur athlete*, . . .* who is the subject of such an allegation, to participate in amateur athletic competition." 36 U.S.C. § 220541(c)(1). Participants in Olympic and Paralympic sports agree to follow the SafeSport Code and its resolution procedures, including arbitration as the sole and exclusive method of resolving any challenge to SafeSport's eligibility decisions.

In this case, SafeSport investigated allegations against Plaintiff, found that he had engaged in sexual misconduct, and sanctioned him with a three-month suspension. Ultimately, despite reminders and an extension of time, Plaintiff did not pay the required arbitration deposit, ask for an extension, or seek a hardship exemption; he thereby waived his right to arbitrate SafeSport's findings and sanction against him. Dismissal of Plaintiff's claims for failure to exhaust his administrative remedies is appropriate under the circumstances. *See, e.g.*, *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 587 (W.D. Tex. 2012) (dismissal for failure to exhaust administrative remedies pursuant to Fed. R. Civ. P. 12(b)(1)); *Callaghan v. US Ctr. for Safe Sport*, No. 2:18-CV-336-FTM-99CM, 2018 WL 4107951, at *5 (M.D. Fla. Aug. 29, 2018) (same pursuant to Rule 12(b)(6)).

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- the instant action is hereby DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction;
- accordingly, Plaintiff's *Ex Parte* Emergency Motion for Temporary Restraining Order (Doc. # 5) is DENIED AS MOOT; and
- the Clerk of Court is directed to close this case.

DATED: July 29, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge